# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**MARY ELIZABETH WHITE,**

        Plaintiff,

v.

**Civil Action no. 5:19-CV-0264**
Judge Bailey

**CMH HOMES, INC., ANDREW CAMEON, R & J CONTRACTING, LLC** and **DOUG BOWSER,**

        Defendants.

## ORDER COMPELLING ARBITRATION

Pending before this Court are defendants' Motion to Compel Arbitration [Doc. 16] and defendants' Motion to Stay Discovery Pending Arbitration [Doc. 18]. The motions have been fully briefed and are ripe for decision. For the reasons hereinafter stated, the motions will be granted.

The first motion seeks an order compelling the parties to arbitrate this matter pursuant to the Binding Dispute Resolution Agreement signed by the plaintiff and CMH Homes, Inc. and Andrew Cameon.

According to the motion, on or about July 6, 2017, Plaintiff and CMH entered into a contract for the purchase and sale of a new manufactured home, serial number CAP031293TNAB (the "Home"). CMH Manufacturing, Inc. constructed the Home at its Appalachia plant in Andersonville, Tennessee.

As part of the contract for the sale of the Home, Plaintiff executed a Binding Dispute

1

Resolution Agreement (the "BDRA"). The BDRA, a broadly worded arbitration agreement, states in pertinent part:

### BINDING DISPUTE RESOLUTION AGREEMENT

The Parties (defined below) agree to resolve all disputes pursuant to the terms of this Binding Dispute Resolution Agreement (the "Agreement"). The Parties are defined as the buyer (whether one or more) who signs below (referred to hereinafter as "Buyer") and CMH Homes, Inc., its subsidiary(s) (e.g., CMH of KY, Inc.), and their/its agents, assignees, successors in interest, and employees (collectively referred to as "Seller"). Buyer and Seller agree that this Agreement also applies to and governs the rights of intended beneficiaries of this Agreement, who include the following additional Parties: (i) manufacturers of the Home (defined below); (ii) contractors, including, without limitation, contractors involved in delivery and setup of Buyer's Home; (iii) title companies and closing attorneys involved in the transaction made in connection with Buyer's Home purchase; (iv) all who sign or benefit from the Contract (defined below); (v) anyone claiming an interest in the Home, (vi) property owners receiving a benefit from the Contract, the Home, or use of the Home, and (vii) any occupants of the Home (referred to hereafter collectively as "Beneficiaries") (Buyer, Seller and Beneficiaries may be referred to herein as "Party" or "Parties").

A.  Scope of the Agreement: This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including but not limited to, common law claims,

2

contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or related to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home (including, but not limited to, the Retailer Closing Agreement, any Purchase or Sales Agreement, buyer's order, supplemental invoice, and other instruments and agreements whereby Seller purports to convey or receive any goods or services to or from Buyer or Beneficiaries (collectively, the "Contract")), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity, and enforceability of the Contract (collectively hereinafter referred to as the "Claim" or "Claims") . . .

\*   \*   \*

C. <u>Agreement to Mediate</u>: All Claims that cannot be settled through direct discussions and negotiation shall be submitted first to mediation with a mutually agreeable mediator ("Mediation"). . . . The requirement of formally filing a Claim with a tribunal, to satisfy an applicable statute of limitations, shall be tolled during the mediation process, with said tolling period to begin on the date that any Party notifies the other(s) in writing of its intent to

mediate (either through a mutually agreeable mediator or the AAA). . . . In the event the Parties are not successful in resolving their dispute in mediation, then the Parties agree to submit their Claims to binding arbitration. Mediation of Claims is a mandatory condition precedent to arbitration or a court proceeding. An agreement to resolve the Claims in mediation shall be enforceable in any court having jurisdiction thereof.

D.      Agreement to Arbitrate: The Parties agree to mandatory, binding arbitration ("Arbitration") of all Claims that are not resolved in Mediation. Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present evidence to the Arbitrator, both in writing and through witnesses. Arbitration proceedings are less formal than court trials. Other rights that the Parties have in court may not be available in Arbitration. The information that can be obtained in discovery from each other or from third persons in Arbitration is generally more limited than in a lawsuit. An arbitrator will decide the case by issuing a written decision called an "award."

E.      Conducting Arbitration: Any Party to this Agreement may commence arbitration at any time following Mediation, subject to the applicable statute of limitations and section "C." of this Agreement. The Arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and to the extent not otherwise preempted by the FAA, by applicable state laws, including common law; (b) this Agreement; and (c) the Rules. The Parties acknowledge and agree that the Home contains

component parts limitation manufactured outside of the state where the Home is sold and delivered; the manufacture, transportation, and sale and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce. . . .

\* \* \*

**R.** **NOTICE: BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT. BUYER AND SELLER FURTHER INTEND TO DIRECTLY BENEFIT AND BIND ALL BENEFICIARIES TO THIS AGREEMENT. IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE PARTIES HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, WILLINGLY AND VOLUNTARILY.**

[Doc. 16-1] (emphasis in original).

Section 2 of the Federal Arbitration Act ("FAA") provides that a written arbitration

agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 is the "primary substantive provision" of the FAA, while §§ 3 and 4 "provide[ ] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone*, 460 U.S. at 24). Indeed, the FAA serves as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Moreover, a court is required to "resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *Moses H. Cone*, 460 U.S. at 24–25); see also *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) ("Indeed, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.").

A party can compel arbitration by establishing: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal

of the defendant to arbitrate the dispute. See *Adkins*, 303 F.3d at 500–01.

While the district courts are to apply "the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA," the courts must also apply the ordinary state law principles regarding the formation of contracts, such as the "validity, revocability, or enforceability of contracts generally." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); see also 9 U.S.C. § 2 (arbitration agreements may be unenforceable "upon such grounds as exist at law or in equity of the revocation of any contract."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). For example, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. See *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted).

This Court finds that all four of the *Adkins* tests have been met: (1) There is a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) a relationship of the transaction to interstate commerce; and (4) the refusal of the plaintiff to arbitrate the dispute.

The plaintiff does not contend that the dispute is not covered by the mediation and arbitration agreement. Rather, the plaintiff contends that the defendants breached the BDRA by "repeatedly failing to engage in mediation." According to the plaintiff, she requested BDRA remedies in a January 2, 2019, letter to CMH. She states that she sent requests for mediation to CMH on March 4 and March 18, 2019, without response. On April 12, 2019, a request for mediation was sent to the AAA. Plaintiff states that thereafter

the parties agreed to a mediator on May 1, 2019, and proposed dates in May to conduct the mediation were sent to CMH's counsel on May 2, 2019. A follow-up inquiry about the proposed mediation dates was sent on May 7, 2019. The defendant did not respond. On June 4, 2019, defendant's counsel said he would schedule the mediation, and provided dates in July. The plaintiff immediately agreed to dates in July, but the defendant never actually scheduled the mediation. At that point, the Plaintiff filed her Complaint on August 23, 2019.

The defendants have provided documents adding to the timeline. According to defendants, consistent with the BDRA, Plaintiff filed a Demand for Mediation with the AAA on April 15, 2019. On April 18, 2019, AAA provided the parties with names of several mediators and their resumes. After reviewing the list of mediators, counsel for the parties mutually agreed to mediate with local attorney, Robert McCoid, who was recommended by the plaintiff's counsel. On May 10, 2019, Plaintiff's counsel notified AAA that the parties agreed to pursue mediation with the local mediator.

The local mediator suggested possible dates in May 2019 for the mediation to take place in Wheeling, West Virginia; however, CMH and their counsel had conflicts with the dates provided. In June 2019, CMH requested additional dates from the local mediator and requested an inspection of the home foundation and basement prior to the mediation. Defendants believed that an inspection of plaintiff's home was necessary to ensure that CMH understood the alleged issues with the home foundation and basement and could engage in meaningful negotiations at the mediation. Plaintiff's counsel was in agreement that CMH could inspect the home foundation prior to mediation.

On June 7, 2019, CMH communicated with plaintiff's counsel regarding potential

dates for the inspection and after conferring with the parties, attorneys, and CMH's expert, the first available date was July 17, 2019. On July 11 and 12, 2019, plaintiff's counsel and CMH's counsel both confirmed that the inspection would take place on July 17, 2019. The inspection took place as scheduled on July 17, 2019 and was attended by plaintiff's counsel, CMH's counsel, CMH's Regional Vice President, and CMH's expert.

After the inspection, CMH's expert began preparing an engineering report, which CMH was to receive prior to mediation. Anticipating the receipt of the report, CMH reached out to plaintiff's counsel on August 16, 2019, requesting availability for the mediation. After no response, a follow-up email was sent to plaintiff's counsel on August 20, 2019, again asking for dates for mediation and specifically requesting availability on September 6 and 11, 2019.

According to defendants, at no time prior to August 20, 2019, did plaintiff's counsel complain to CMH or CMH's counsel or staff about any delay in scheduling of the mediation. Additionally, at no time prior to August 20, 2019, did plaintiff's counsel file any complaint with the AAA based upon any alleged delay by CMH in mediating. In fact, AAA reached out to the parties multiple times requesting an update on the status of mediation and after no response from Plaintiff, AAA closed its file.

On August 23, 2019, plaintiff's counsel acknowledged the multiple requests seeking availability to schedule the mediation. However, at that time, despite previously agreeing to an inspection prior to mediation, she refused to provide dates, stating instead that Plaintiff has proceeded with filing suit.

"Under section 3 of the FAA, a party loses its right to a stay of court proceedings in order to arbitrate if it is 'in default in proceeding with such arbitration.' 9 U.S.C. § 3 (2006).

Default in this context resembles waiver, but, due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default. *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)." *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342-43 (4th Cir. 2009).

"For example, simply failing to assert arbitration as an affirmative defense does not constitute default of a right to arbitration. See *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 96 (4th Cir. 1996). Similarly, delay and participation in litigation will not alone constitute default. See *MicroStrategy[, Inc. v. Lauricia]*, 268 F.3d [244] at 250–52 [(4th Cir. 2001)]. But a party will default its right to arbitration if it 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.' *Maxum Founds.*, 779 F.2d at 981. The "heavy burden" of showing default lies with the party opposing arbitration. *Am. Recovery Corp.*, 96 F.3d at 95.

In this case, this Court cannot find that the defendants defaulted their right to compel mediation and arbitration. While the defendants were non-responsive prior to April 15, 2019, the course of events thereafter appears reasonable and certainly does not constitute default.

For the reasons stated above, the defendants' Motion to Compel Arbitration [**Doc. 16**] is **GRANTED**. This Court **ORDERS** that plaintiff White's claims be submitted to mediation with mediator McCoid within the next 60 days. If the mediation is unsuccessful, then the parties are to forthwith submit the issues to arbitration. Further, this Court **ORDERS** that this action is **STAYED** pending completion of arbitration, and **DIRECTS** the

parties to notify this Court upon completion of arbitration. Defendants' Motion to Stay Discovery Pending Arbitration **[Doc. 18]** is **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

**DATED:** January 16, 2020.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE